## M'BURNEY *vs.* FLAGG.

APPEAL FROM THE COURT OF THE FIFTH JUDICIAL DISTRICT FOR THE PARISH OF ST. MARY, THE JUDGE THEREOF PRESIDING.

Where A conveys to B certain slaves in South Carolina, conditioned that they shall be delivered up at the end of two years *if required;* or that in the mean time they might become the absolute property of B, on his paying the price stipulated: *Held*, that this is not a sale so as to vest the property in B, and make it liable while in his possession and after removal to this State, for his debts.

This suit was commenced by an opposition of the plaintiff to an order of seizure and sale, obtained by the defendant, against certain slaves in the possession of Wm. Youngblood.

The plaintiff alleges, she is the owner of said slaves. That Youngblood has been for a long time in embarrassed circumstances; that she is the aunt of his children, and being desirous of assisting them in their education and support, conveyed the said slaves to their father, with the view of effecting these objects, and on the sole and only conditions, that the said negro slaves and their issue should be considered her property, and not liable to any of Youngblood's contracts;

WESTERN DIST.
*Sept. 1837.*

M'BURNEY
*vs.*
FLAGG.

but that he might have them when he paid her the sum of two thousand three hundred and sixty-four dollars. This payment was never made.

The defendant pleaded a general denial, and averred, that Youngblood had been in the possession of said slaves for a long time ; and if the plaintiff ever had title, it has been lost by prescription. That she suffered Youngblood to bring the slaves into this State, as his own property, to obtain a false credit thereon and to defraud his creditors, and that she has participated in the fraud, and lost any title she may have had thereby. He prays that her demand be rejected.

The cause was tried on these pleadings and issues.

It appeared that on the 3d June, 1829, when Youngblood was on the eve of leaving South Carolina, the plaintiff, in writing, made the conditional sale to him, which she sets up, of the slaves in question.

In 1832, Youngblood mortgaged these slaves with others to the defendant, to secure a debt of eight or nine hundred dollars. The defendant had obtained an order of seizure and sale, and was proceeding to sell them when the plaintiff made her opposition. She had judgment, and the defendant appealed.

*Lewis* and *Bowen,* for plaintiff.

1. The agreement between plaintiff and William Youngblood, if a sale at all is with a suspensive condition.—*Louisiana Code,* 2016, 2033, 2036, 2038. 6 *Toullier,* 507, *n.* 472. *n.* 475, *and no.* 475, *and note* (1) *p.* 529, *n.* 501.

2. The title to the slaves *remained vested in plaintiff,* and could not be divested, but by payment of the price agreed upon. *Louisiana Code,* 2038, 1446. 6 *Toullier,* 560, *n.* 526. *p.* 508, *n.* 473. *p.* 229, *n.* 501, *and note* (1.)

3. General W. Youngblood, had no title to the slaves, and could not sell or mortgage them to defendant, Flagg. *Louisiana Code,* 3267, 3268, 3271. 4 *Martin, N. S.* 371-2.

4. No law of this state requires the registry of such an act, as the one sued upon. .

5. Flagg is *assign* (*ayant cause*) of General W. Youngblood, and as such, cannot plead the want of registry, even in cases where it *is* required. *Louisiana Code*, 3522, *n.* 5. 2239 and 2417.

6. W. Youngblood could confer no greater right on the slaves, to Flagg, than he had himself. 7 *Toullier*, 32, *n.* 31.

*Carleton, J.*, delivered the opinion of the Court.

It appears that William Youngblood, was indebted to the defendant in a sum of money, to secure the payment of which, he mortgaged certain slaves by public act, on the 10th July, 1830, before the parish judge of St. Mary. The money not having been paid, the defendant obtained thereon an order of seizure and sale, whereupon the plaintiff instituted this suit, and claimed the slaves as her property.

The defendant answers by general denial, and opposes the plea of prescription in support of Youngblood's title, and further avers, that the petitioner suffered him to introduce the slaves into the country, and thereby enabled him to obtain credit in defraud of third persons, by reason of which, the property became liable for his debts.

The cause was submitted to the court, which set aside the order of seizure and sale, and decreed the slaves to be the property of the petitioner. The defendant appealed.

At the trial of the cause, the following document was introduced in evidence, by the plaintiff, relied on by defendant as Youngblood's title to the slaves, and the basis of the mortgage.

"Memorandum of an agreement entered into this 3d day of July, 1829, between William Youngblood, of the one part, and Mrs. Eliza M'Burney, of the other part. Whereas, the said Eliza M'Burney, legally possessed in her own right of six negro slaves, named Sam, Cudjoe, Dick, Abram, Cupid, Trace and Peas, is willing to dispose of some of the said slaves to William Youngblood, upon a credit, provided she can be indemnified and secured in the ultimate payment therefor ; and whereas, said William Youngblood is willing, at an extended credit, to pay for the said negroes, the sum of

two thousand three hundred and sixty-four dollars and eleven cents. Now, know all men by these presents, that I, the said Eliza M'Burney, in consideration of the sum of one dollar, to me in hand paid, do agree to permit the said Wm. Youngblood, to take into his possession the said negro slaves, and to remove the same from this state, upon these sole and only considerations. That the said slaves, with the issue of the females, shall be considered my property, not liable to any contracts of said William Youngblood, until the payment of the said sum of two thousand three hundred and sixty-four dollars, together with the interest that shall have accrued on the same, at the time of the payment of the principal ; and I, the said Wm. Youngblood, in consideration of the premises, do hereby acknowledge myself to have received said negroes, and upon the conditions above specified, and none other ; do acknowledge myself to have received the said negroes, as the property of said Eliza M'Burney, to be considered hers, with the issue of the females as aforesaid, until the full payment of the said sum of two thousand three hundred and sixty-four dollars and eleven cents, with interest as aforesaid; and I, the said William Youngblood, do bind myself to deliver up the said negroes to the said Eliza M'Burney, whenever she shall demand the same, after the expiration of two years, if payment in full is not then made ; and moreover, do bind my heirs, executors and administrators, to deliver the same at my decease, if the said sum of money is not then paid, an allowance being made for what may have been paid on that account : in witness whereof, we have hereunto set our hands and seals at Walluoni, in the State of South Carolina, the day and year first above written.

(Signed)          " W. YOUNGBLOOD,
                  " ELIZA W. M'BURNEY."

Signed and Sealed
   in the presence of
   D. C. CAMPBELL.

The points raised in controversy have been fully argued by counsel, and sustained by a number of authorities ; never-

theless we do not think the case presents any question of difficult solution.

The parties expressly stipulate, that the property in the slaves, shall abide in the plaintiff; that Youngblood should not become owner of them, nor they be liable to his contracts, until he should have paid the sum agreed on.

The contract wants some of the essential requisites of a sale ; for the plaintiff has no absolute right to demand the price, and Youngblood might at any time he thought proper, have returned the slaves, after enjoying their services gratuitously. Had he sold them, under such a title, the transfer would have certainly been void, and therefore the mortgage which may result in an alienation, must necessarily share the same fate. No illustration can make the subject plainer than the parties themselves have made it.

We, therefore, think there is no error in the decree of the District Court.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be affirmed, with costs.

When A conveys to B certain slaves in South Carolina, conditioned that they shall be delivered up at the end of two years *if required ;* or that in the mean time they might become the absolute property of B, on his paying the price stipulated : *Held,* that this is not a sale so as to vest the property in B, and make it liable while in his possession, and after removal to this State, for his debts.