MONROE, J.
Plaintiff obtained judgment in the district court against defendants, in solido, for a diamond stud and a diamond heart, and, in default of delivery, for $810.94 (as the value of those articles), with interest.
Moss had made no defense and took no appeal. Winehill & Co. appealed, and the judgment, as to them, was reversed by the Court *681 of Appeal. Plaintiffs are before this court praying for a review and reversal of the ruling last mentioned.
The facts, as disclosed by the record, are as follows:
The defendant Moss is a mechanic (jeweler, as we take it), who worked, at times, for plaintiff, and who was, on one or two occasions, intrusted with articles of jewelry to sell, with the understanding that the articles were to bring a certain price, and that he might retain-, as his commission, whatever he could get, over and above the price.
On March 28,1908, he represented to plaintiffs that he had a customer who wanted a diamond stud, and he was intrusted with the stud here claimed, on the condition that he sell it and return a certain amount as the proceeds, or else return the stud. It appears, however, that Moss had made the acquaintance of a young Roumanian named Reichstadt, who had been in this country but a month or two, and that he had led Reichstadt to believe that he (Moss) would assist him in getting a position. When, therefore, he came into the possession of plaintiff’s diamond stud, having really no customer for it and having obtained it with the intention of appropriating it to his own use, he easily obtained Reichstadt’s consent to pawn it for him, and he went with Reichstadt to the pawnshop of the defendants Winehill & Co., but remained outside whilst Reichstadt went in and effected the pawn, using for that purpose the name “M. Wiseman,” for the reason (as he testified) that, having so recently arrived in this country, he did not wish to appear as having been engaged in a transaction of that kind. The money that he obtained, and the pawn ticket, he delivered to Moss, who was waiting for him on the banquette, and he received no compensation for his service; the whole thing, so far as he was concerned, having been done in good faith as a matter of favor, which he hoped would be requited in kind.
On April 2d, following, Moss obtained from plaintiffs the “diamond heart” which is here claimed, on like conditions, and disposed of it in the same way. A few days later, failing to account for either of the articles mentioned or the proceeds (but, -upon demand being made, representing that he had been “held up” and robbed), he was arrested, and soon made a confession whereby plaintiffs and the police were informed as to the disposition that he had made of the jewelry. One of the plaintiffs thereupon, accompanied by a detective, visited the shop of Winehill & Co., and they were shown the articles in question, which were then and there identified as the plaintiffs’ property; AVinehill & Co. being notified of that fact and of the circumstances under which the property had been obtained from -plaintiffs. In the meanwhile' Moss, about the time of his arrest, borrowed $100 from Reichstadt (being all that the latter had), on the pretense that he was in great trouble. And somewhat later one Fink, a pawnbroker, proposed to Reichstadt that they should get the pawn tickets from Moss, that he (Fink) would redeem the property, and that he would also pay the $100 due to Reichstadt; and it was so done, save that Fink, after getting the property, paid Reichstadt only $75, instead of the $100 that he had promised him.
The counsel employed by plaintiffs, in view of the fact that it was then growing late in the season, did not bring this suit until the courts opened in October, and on the trial (in May, 1908) it was shown that Moss had been convicted and sent to the penitentiary for his share in the business, and, having been pardoned, after serving part of his sentence, was present in court, though not called on to testify.
From the opinion of the Court of Appeal, it appears that plaintiffs brought another *683 suit, similar to this, in which Pink was made defendant, and this case was decided for the reasons given in the Pink Case. The record does not show what these reasons were; but it appears, from the brief of counsel, that it was found as a fact that the property involved in the Pink Case had been sold by Moss to Pink. However that may be, we are of opinion that, in the instant case, our learned Brethren of the Court of Appeal have fallen into error. Moss was not the owner of the property here in question; for there has been no attempt to contradict the testimony of the plaintiff Frantz to the effect that he did not sell it to him, but merely intrusted him with it, in order that he might show it to his (pretended) customer, and we find nothing in any of the testimony to warrant the belief that plaintiffs would have sold to Moss property of the value of that in question wholly on credit. It is true that Moss was authorized to sell the property upon certain conditions with reference to his compensation for that service, but that gave him no more right to pawn it for his own benefit than if he had been an ordinary salesman employed in plaintiffs’ store.
“Though a factor may sell and bind his principal, he cannot pledge the goods as a security for his own debt.” Lallande v. His Creditors, 42 La. Ann. 705, 7 South. 805; Holton v. Hubbard & Co. et al., 49 La. Ann. 716, 22 South. 338.
See, also, as sustaining the principle involved, McBurney v. Flagg, 11 La. 333; Perryman v. Demaret, 11 La. 347; Campbell v. Nichols, 11 Rob. 16; Moore v. Lambeth, 5 La. Ann. 66; Russell v. Kunemann, 19 La. Ann. 517; Stern Brothers v. Germania Nat. Bank, 34 La. Ann. 1119.
It is therefore ordered, adjudged, and decreed that the judgment of the Court of Appeal, here made the subject of review, be set aside and annulled, and 'that the judgment of the district court (reversed by the Court of Appeal) be affirmed; the defendants and appellants to pay the costs of the appeal and of this proceeding.